```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,              MEMORANDUM & ORDER

          -against-                     09-cr-330 (KAM)

LUIS GARCIA                             16-cv-4958 (KAM)

                Defendant.

----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge**

Pending before the court is the motion of Luis Garcia ("petitioner") for immediate resolution of his pending petition to vacate his conviction ("Motion to Expedite") and sentence, pursuant to 28 U.S.C. § 2255 (the "Petition"). For the reasons set forth in this Memorandum and Order, the court denies Mr. Garcia's Petition in its entirety and, thus, denies petitioner's Motion to Expedite as moot.

### BACKGROUND[1]

By summary order dated January 7, 2015, the Second Circuit affirmed the judgment of the district court. On September 1, 2016, petitioner filed, *pro se*, the instant Petition pursuant to 28 U.S.C. § 2255, challenging his

---

[1] The court assumes that the parties are familiar with the facts and procedural history of this case, as aptly summarized in the government's memorandum in opposition to the instant Petition. (ECF No. 179, Gov. Mem. 6-23.) This Memorandum and Order sets forth below the relevant facts and procedural history.

1

conviction of conspiracy to commit money laundering on the grounds that he received ineffective assistance of counsel at the trial and appellate levels. (ECF No. 163, Petition.) On September 7, 2016, the court ordered petitioner's trial, sentencing and appellate counsel to respond to the petition ("OTSC"). (ECF No. 164, Order to Show Cause.) All attorneys responded to the court's OTSC. (ECF Nos. 168, 169, 170, 171, 173.)

On January 26, 2017, respondent filed its opposition to the petition. (ECF No. 179, "Gov. Opp.") On March 6, 2017, petitioner filed a motion to amend and correct the petition, and a reply in further support of his petition. (ECF No. 183, "Am. Pet."; ECF No. 184, Response to the Government's Opposition "Pet. Reply.").) On April 10, 2017, the court ordered petitioner's trial and appellate counsel, Mr. Moskowitz, to respond to the amended petition, which he did on May 5, 2017. (ECF No. 186, "Moskowitz Aff.") On June 5, 2017, respondent filed its opposition to the amended petition. (ECF No. 187, "Second Gov. Opp.") On August 3, 2017, petitioner filed his reply memorandum in response to the government's opposition. (ECF No. 190, "Second Pet. Reply.") On April 24, 2020, petitioner filed the instant Motion to Expedite his pending 2255 Petition. (ECF No. 194, Motion to Expedite.)

**LEGAL STANDARD**

A prisoner in federal custody may challenge the validity of his sentence by filing a motion pursuant to 28 U.S.C. § 2255 ("§ 2255") to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C § 2255(a); *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004). In order to prevail on a § 2255 petition, the petitioner must establish error that is constitutional, jurisdictional, or "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (*quoting Hill v. United States*, 368 U.S. 424, 428 (1962). The Second Circuit has recognized the importance of "narrowly limiting the relief permitted under § 2255" to preserve "respect for the finality of criminal sentences, [and] the efficient allocation of judicial resources." *Id*.

An ineffective assistance of counsel claim is governed by the standards articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a petitioner must

3

demonstrate that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 668, 694, *superseded on other grounds* by Antiterrorism and Effective Death Penalty Act of 1966, Pub. L. No. 104-132, 110 Stat. 124; *accord United States v. Abad*, 514 F.3d 271, 275 (2d Cir. 2008) (*quoting Strickland*, 466 U.S. at 688, 694); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002).

With respect to the first prong of *Strickland*, counsel's function in a criminal case includes advocating defendant's cause, consulting with defendant on important decisions, and keeping defendant informed of important developments during the prosecution. *Strickland*, 466 U.S. at 688. As *Strickland* makes clear, there is no "checklist" for judicial evaluation of attorney performance; rather, the performance inquiry in an effectiveness claim must be whether counsel's assistance was reasonable considering all the circumstances. *See Premo v. Moore*, 131 U.S. 733, 742 (2011); *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013). In connection with ineffective assistance claims challenging counsel's failure to make certain motions, the motion must be a meritorious one. "Trial counsel's failure to bring a meritless . . . motion cannot constitute ineffective

4

assistance." *United States v. Tisdale*, 195 F.3d 70, 73-74 (2d Cir. 1999).

With respect to the second prong of *Strickland*, a petitioner must show that but for the attorney's deficient performance, there is a "reasonable probability" that the results would have been different. *Strickland*, 466 U.S. at 693. On the one hand, a "reasonable probability" of prejudice requires more than a mere showing that the errors had "some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id*. On the other hand, a petitioner need not establish that the attorney's deficient performance "more likely than not" altered the outcome. *See Gonzalez*, 722 F.3d at 130, 135.

Although the test for ineffective assistance of counsel is two-pronged, the Supreme Court specifically noted in *Strickland* that the federal district courts need not address both components if a petitioner has failed to establish either one:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.

5

466 U.S. at 697.

The failure to establish either prong is fatal to an ineffective assistance claim. *Gonzalez*, 722 F.3d at 130. The *Strickland* standard is "highly demanding" and "rigorous," and the petitioner bears the burden of proving that both *Strickland* prongs are met. *Kimmelman v. Morrison*, 477 U.S. 365, 381-82 (1986); *see also Lindstadt v. Keane*, 239 F.3d 191, 199 (2d Cir. 2001) ("The *Strickland* standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard.")

Furthermore, a defendant challenging sufficiency of the evidence "faces an uphill battle, and bears a very heavy burden." *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (citation omitted). The question is whether, "after viewing the evidence in the light most favorable to the prosecution," the reviewing court finds that "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making that determination, a court should be mindful that "[a]ssessments of witness credibility and choices between competing inferences lie solely within the province of the jury." *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010).

## DISCUSSION

**Habeas Petition**

6

Petitioner challenges his conviction of conspiracy to commit money laundering on various ineffective assistance grounds. (ECF No. 163, Petition; ECF No. 183, Am. Pet.) For the reasons set forth below, the court is unpersuaded by each of petitioner's arguments and dismisses and denies his 2255 Petition in its entirety.

i. **Appellate Counsel Was Not Ineffective for Failing to Argue in a Rule 29 Motion That Petitioner's Actions Did Not Constitute Money Laundering**

Petitioner contends that his trial and appellate counsel failed to pursue a Rule 29 Motion challenging the sufficiency of the evidence. (ECF No. 163, Petition, at 5-6, 27-31; ECF No. 183, Am. Pet. at 5, 16.[2]) Notably, at the close of the government's case, Judge Gleeson denied the defense's Rule 29 motion summarily without oral argument:

> THE COURT: All right. Come on up to sidebar, please.
>
> THE COURT: Any motions?
>
> MR. MOSKOWITZ: Yes, Your Honor. At this time, the defendant moves pursuant to Rule 29 for a judgment of acquittal.
>
> THE COURT: Okay. Denied.
>
> (ECF No. 128, TT at 817-19).

---

[2] Citations are to the ECF pagination because petitioner's briefs are not consecutively paginated.

7

Subsequently, petitioner testified in his own defense, claiming that his contacts with co-conspirators involved legitimate business transactions. (TT. 881-83.) At the conclusion of the defense's case, Judge Gleeson offered the defense an opportunity to renew the Rule 29 motion, which was again denied without entertaining further argument. (ECF No. 128-1, TT. at 1029.) There was overwhelming evidence at trial of petitioner's involvement in money laundering conspiracy; thus the court rejects petitioner's contention that his trial and appellate counsel were ineffective for failing to pursue this argument.

First, in support of his petition, petitioner cites *United States v. Harris*, 666 F.3d 905, 909 (5th Cir. 2012), in which the Fifth Circuit held that monetary payments for drugs did not become proceeds of illegal activity until the unlawful activity, *i.e.* the drug delivery, was complete. *Id.* As the Fifth Circuit explained, Harris sold drugs across the country to Miller and other individuals. Miller and the other individuals, in turn, sent payments for the drugs to Harris, through bank wires. *Id.* at 906-07. In other words, the court found that Miller and the other individuals were buyers of the drugs, and that their transfers of money constituted mere payment of the purchase price for the drugs, and that this does not amount to money laundering. Rather, the "crime of money laundering is

8

targeted at the activities that generally follow the unlawful activity in time." *Id*. at 910.

As an initial consideration, *Harris* was decided by the Fifth Circuit, so it is not controlling authority in this circuit. Moreover, the factual and legal rationale of *Harris* does not apply to the facts in the present case. Unlike in *Harris*, petitioner was not a purchaser of the drugs, and his offense conduct was not the "mere payment of the purchase price for drugs." *Id.* Mr. Ginsburg affirmed that he did not challenge the Rule 29 motion because a "plain reading of the testimony of the government's witnesses at the trial supports the conclusion that there was a drug transaction . . . [and] that they made Mr. Garcia aware that the money he was laundering was the proceeds of a drug transaction[.]" (ECF No. 169, Ginsburg Affidavit, at 2.) After careful consideration and discussion with petitioner, Mr. Ginsburg and Ms. Abderrashman decided to pursue a Rule 33 motion. (*Id.*) Additionally, Ms. Abderrashman affirmed that she did not bring a Rule 29 motion because the facts adduced at trial were unfavorable. (ECF No. 171, Abderrashman Affirmation, at 2.)

In addition, petitioner asserts that trial counsel, Mr. Moskowitz, failed to argue in a Rule 29 motion that the government presented insufficient evidence of the "concealment" element to sustain the money laundering conspiracy conviction.

9

(ECF No. 183, Am. Pet. at 5, 16.) In response, Mr. Moskowitz affirmed that he believed this argument is "meritless and belied by the overwhelming evidence at trial." (Moskowitz Affidavit, at 3.) Indeed, Mr. Moskowitz stated that the "primary purpose of involving Mr. Garcia in the transfer of the money to Mexico was to make it appear as if the money was coming from a legitimate business, *i.e.* Mr. Garcia's jewelry business." (*Id.*)

There was ample trial evidence that Mr. Garcia knew that he was acting to conceal or disguise the nature, source, location, ownership and control of the drug proceeds. *Cuellar v. United States*, 553 U.S. 550, 568 (2008). Specifically, Mr. Garcia received coded instructions from Colombia for the disbursement of proceeds that were faxed to him at a neighboring store. (ECF No. 128, TT. at 991-92.) The instructions directed petitioner to deposit certain amounts of drug proceeds into various bank accounts. (ECF No. 187-1, GX 29.) The bank account numbers were designed to mimic serial numbers for watches, and references for the amounts to be deposited were designed to appear as prices for those watches. (ECF No. 134, TT. at 608-09, 627-35, 680-82.) Mr. Garcia used his jewelry business to disguise the money laundering transactions. As noted by the government, the use of the coded documents evidences Mr. Garcia's intent to conceal the nature of the funds, *i.e.* drug proceeds.

10

In addition, Mr. Garcia used cash delivered to him by drug dealers to buy expensive watches and jewelry in Queens, which were sent to Mexico.  (ECF No. 134, TT. at 608-09.) Petitioner's business sold watches and jewelry, so his shipments of the same to Mexico were designed to appear legitimate and conceal the true nature, source, location, ownership, and control of the drug proceeds.  Mr. Garcia also transported hundreds of thousands of dollars in cash to other individuals, in boxes with hidden compartments, as payment for drug shipments.  (ECF No. 133, TT. at 476-81.)  Furthermore, at trial, Mr. Frank DiGregorio, an expert qualified pursuant to Federal Rule of Evidence 702 in the field of drug trafficking and money laundering, testified that the instant methods of money laundering are common ways to conceal or disguise drug proceeds.  (ECF No. 128, TT. at 771-95.)

In sum, there was ample evidence at trial of petitioner's involvement in the money laundering conspiracy. Moreover, the jury's guilty verdict reflects that the government had proven petitioner's involvement in the money laundering conspiracy beyond a reasonable doubt.  Petitioner plainly could not meet the "very heavy burden" in challenging the sufficiency of the trial evidence, *United States v. Mi Sun Cho*, 713 F.3d at 720, and his attorneys at trial and on appeal were not ineffective for failing to raise this argument.

**ii. Trial Counsel's Performance Was Not Ineffective, and Petitioner's Right to Counsel Was Not Violated by the Court's Denial of Continuance of Trial**

Petitioner advances duplicative arguments in support of his habeas petition that have previously been considered and rejected by Judge Gleeson in the context of petitioner's post-trial Rule 33 motion. Specifically, petitioner contends that his trial counsel, Attorney Lawrence Herrmann, was distracted throughout his representation due to his wife's terminal illness and his own personal health issues, and also contends that Judge Gleeson's refusal to grant a continuance of trial deprived him of a fair trial. (*Compare* ECF No. 163, Petition, at 7-8 and ECF No. 136, Rule 33 Motion.) In the Rule 33 response, the government thoroughly addressed petitioner's claimed failures by Mr. Herrmann, and Judge Gleeson ruled against petitioner. (ECF No. 143, at 23-37.)

As noted by Mr. Herrmann, Mr. Garcia does not allege any ineffectiveness on behalf of co-counsel at trial, Attorneys Avraham Moskowitz and Todd Parker, who "co-tried the entire case as defense counsel before the Hon. John Gleeson, and were not in any way distracted or affected by Affiant's wife's failing health." (ECF No. 170, Herrmann Affidavit, at 2-3.) Petitioner contends that counsel was ineffective for failing to notice altered documents, missing deadlines, and seeking extensions. (Petition, at 37.) Petitioner further asserts that his right

12

to a fair trial was violated when the court denied continuance of the case based on these circumstances. (*Id.*)

In response, Mr. Herrmann affirmed that he did in fact suffer from medical issues and an ailing wife. (ECF No. 170, at 2.) However, to make up for his understandably divided attention, Herrmann retained experienced co-counsel Avraham Moskowitz and Todd Parker to assist with trial. (*Id.*) Mr. Herrmann further affirmed that he and his co-counsel "put in long hours, worked diligently and provided the best aggressive defense possible in a very difficult case for the defense," despite affiant's wife's failing health. (ECF No. 170, at 2.)

After considering, *inter alia*, petitioner's arguments and Mr. Herrmann's affidavit, Judge Gleeson denied petitioner's Rule 33 motion on ineffective assistance of counsel and/or conflict of interest grounds. (ECF No. 146, Minute Entry; 4/11/2013 Oral Argument Tr. 34:21-35:17.) As Judge Gleeson stated on the record, "[S]ome of the complaints about the performance of Mr. Herrmann sound [in] conflict of interest, others simply allege poor performance arising in part out of his divided attention because his wife was so ill and I find none of them either individually or in the aggregate persuasive." (4/11/2013 Oral Argument Tr. 35:12-17.) Judge Gleeson further stated, in regard to Mr. Herrmann's performance: "[Mr. Herrmann is] an attorney [that's] been around a long time. He has a

13

well-deserved good reputation as a trial lawyer.  He fought this case hard. . . .  And if [Mr. Herrmann's affidavit] establishes nothing else, and it establishes plenty else, it establishes that there were tactical decisions made by Mr. Herrmann and those tactical decisions can't be properly second guessed on a Rule 33 motion."  (*Id.* at 37:8-25.)  Judge Gleeson also noted that the fact that "Mr. Herrmann was assisted by one of the very best trial lawyers around, Avi Moskowitz . . . makes the [Rule 33] motion all the less persuasive."[3]  (*Id.* at 38:4-14.)

Petitioner's well-trodden arguments were previously rejected by the court, and he has presented no additional evidence that would sway the court's decision for purposes of the instant petition.  Thus, the court denies petitioner's motion on this ground.

---

[3] On October 28, 2016, petitioner filed a "motion to strike" Mr. Herrmann's "allegations from his pleading" pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)").  (ECF No. 175, Motion to Strike Attorney's Allegations from His Pleading.)  Rule 12(f) is inapplicable.  Rule 12(f) provides that, on its own or on motion by a party, the court is authorized to strike "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  The Second Circuit has construed Rule 12(f) to pertain to prolix pleadings that place "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage."  *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).  To the contrary, Mr. Herrmann's detailed affidavit concerning his representation of petitioner at trial, is plainly relevant to petitioner's ineffective assistance of counsel claims, and Mr. Herrmann's affidavit is entitled to due consideration.  As ordered by the court on September 7, 2016, all of petitioner's former counsel were directed to respond to petitioner's allegations of ineffective assistance.  (ECF No. 164, Order to Show Cause.)  An attorney may provide facts regarding representation of a former client who alleges that counsel was ineffective.  *Sparman v. Edwards*, 154 F.3d 51, 52 (2d Cir. 1998) (per curiam) (noting that an attorney accused of providing ineffective assistance should have the opportunity to be heard and to present evidence in response).  The court respectfully denies in its entirety petitioner's motion to strike Mr. Herrmann's affidavit.

14

### iii. Sentencing Counsel Was Not Ineffective for Failing to Object That the Funds Were Not the Proceeds of Drug Trafficking.

Petitioner also contends that his sentencing counsel, Mr. Ginsburg and Ms. Abderrashman, failed to object to the court's determination that Mr. Garcia had laundered approximately $6.5 million in drug proceeds. (ECF No. 163, Petition, at 9, 39-40.) Judge Gleeson found at sentencing that petitioner was responsible for laundering over $6 million in drug proceeds. On direct appeal, petitioner challenged the district court's guidelines calculation. By summary order, the Second Circuit found that the district court did not abuse its discretion in imposing the sentence and affirmed the judgment. (ECF No. 162, Mandate of USCA.)

Petitioner contends that sentencing counsel should have argued that "a transaction to pay for illegal drugs is not money laundering," based on his reliance on the inapplicable Fifth Circuit decision, *Harris*. (ECF No. 163, Petition, at 39-40.) He contends, further, that had the court accepted this argument, it would have calculated petitioner's Guidelines range based on a smaller amount, and there is a reasonable possibility that he would have received a shorter sentence. (*Id.*) For the reasons set forth above, the court rejects petitioner's argument, which is based on an incorrect view of the case law.

## CONCLUSION

15

Based on the foregoing, the petition for a writ of *habeas corpus* and petitioner's motion to strike Mr. Herrmann's affidavit are **denied** in their entirety. The court also **denies** petitioner's motion to expedite the motion as moot. Because Mr. Garcia has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) ("A petitioner satisfies [the standard under Section 2253(c)(2)] by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

The Clerk of Court is respectfully requested to close 16-cv-4958, enter judgment denying and dismissing the petition, mail a copy of this Memorandum and Order and the judgment to petitioner at his address of record, and note service on the docket.

**SO ORDERED.**

DATED:  May 26, 2020
        Brooklyn, New York

_____/s/_____
**HON. KIYO A. MATSUMOTO**
United States District Judge