UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA,

**MEMORANDUM AND ORDER**

- against -                                    09-CR-330(KAM)


LUIS GARCIA,
            Defendant.

--------------------------------X

KIYO A. MATSUMOTO, United States District Judge:

        Before the court is a motion for compassionate release
initially filed by *pro se* defendant Luis Garcia, who is
currently serving a 210-month sentence at the North Lake
Correctional Facility, in Baldwin, Michigan ("CI North Lake"),
to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).
(*See* ECF Nos. 202, Motion to Reduce Sentence from Mr. Garcia
("Def. Mot.").)  Mr. Garcia moves for a sentence reduction based
on his medical condition and heightened risk of illness or death
as a result of the global COVID-19 pandemic.  (*See* Def. Mot. at
1.)  The Government opposes Mr. Garcia's motion.  (*See* ECF No.
203, Government Response in Opposition of Motion for Sentence
Reduction ("Gov't Opp.").)

        On January 21, 2021 Mr. Garcia requested an
appointment of counsel to assist him in moving for a sentence
reduction.  (*See* ECF No. 205.)  The court granted Mr. Garcia's
request for counsel and appointed Michael Hueston, Esq.  (*See*

1

ECF No. 206; Minute Entry 1/28/2021.)  On April 16, 2021,
defense counsel submitted a supplement to Mr. Garcia's motion
for compassionate release, adding three further bases for
granting a sentence reduction: Mr. Garcia's rehabilitation, his
satisfaction of the sentencing factors under 18 U.S.C. §
3553(a), and his unjustly long sentence.  (*See* ECF No. 215,
Supplement in Support of Motion to Reduce Sentence ("Def.
Supplement"), at 1.)  For the reasons set forth below, Mr.
Garcia's motion is respectfully DENIED.

**BACKGROUND**

Between August 1, 2007, and February 11, 2008, Mr.
Garcia conspired with Columbian and Mexican drug cartels to
launder proceeds from illegal drug activity on at least 17
occasions, totaling at least $6,520,000.  (ECF No. 201,
Presentence Investigation Report ("PSR") ¶ 6.)  As an owner of a
jewelry store in Queens, New York, Mr. Garcia laundered cash
proceeds from sales of cocaine imported from Mexico to the New
York City area.  (*Id.*)  The defendant's money laundering scheme
included sending luxury watches or expensive goods abroad,
depositing cash into multiple bank accounts, and structuring
cash deposits.  (*Id.*)  The defendant was arrested on February
14, 2008, and, at the time of his arrest, defendant initially
cooperated with law enforcement and provided substantial post-

2

arrest statements, admitting that he was aware that the cash proceeds stemmed from drug trafficking. (*Id.* ¶ 7.)

Following his arrest on February 14, 2008, defendant was released on bond before he was rearrested on October 15, 2008.  (PSR at 1; ECF No. 2, Arrest Warrant.)  On May 22, 2009, Mr. Garcia was indicted for a single count of conspiring to launder drug money.  (ECF No. 19, Indictment.)

Mr. Garcia was convicted following a jury trial of conspiring to launder money in violation of 18 U.S.C. § 1956(h). (ECF No. 157, Judgment.)  On November 8, 2013, Judge John Gleeson sentenced the defendant to 210 months' (17½ years) of imprisonment, to be followed by three years of supervised release.  (ECF No. 156, Minute Entry 11/08/2013.)  According to the statement of reasons provided by Judge Gleeson, a below Guidelines sentence of 210 months' imprisonment reflected the "extremely serious nature of the offense conduct and is no greater than necessary" to fulfill the goals of sentencing. (ECF No. 158, Statement of Reasons.)

Mr. Garcia filed an appeal on January 22, 2014.  (ECF No. 159, Notice of Appeal.)  The U.S. Court of Appeals for the Second Circuit affirmed Mr. Garcia's conviction and sentence by summary order on January 7, 2015, *see United States v. Garcia*, 596 Fed. App'x 24 (2d Cir. 2015) (summary order).  (ECF No. 162, Mandate.)

Mr. Garcia subsequently filed a habeas petition alleging that four separate attorneys who represented him at trial, at sentencing, and on appeal all rendered ineffective assistance of counsel (ECF No. 163) and requested to be released on bail pending resolution of his habeas claim (ECF No. 166).

On March 6, 2018, this court rejected Mr. Garcia's request for release pending the resolution of his habeas petition, holding that Mr. Garcia was not likely to prevail on the merits of his ineffective assistance claims and had not demonstrated "extraordinary circumstances" justifying his release on bail. (*See* ECF No. 191.)  On May 26, 2020, this court denied Mr. Garcia's habeas petition, rejecting all of his claims of ineffective assistance of counsel.  (ECF No. 196.)  Mr. Garcia appealed this court's decision and on December 15, 2020, the United States Court of Appeals for the Second Circuit dismissed his appeal, holding that Mr. Garcia had not "made a substantial showing of the denial of a constitutional right." *See Garcia v. United States*, No. 20-1890, ECF No. 31 (2d Cir. Dec. 5, 2020).

On December 14, 2020, Mr. Garcia filed the instant motion for a sentence reduction under the First Step Act, due to the COVID-19 pandemic and his higher risk of infection in light of his age (62 years old) and deteriorated medical conditions after he contracted COVID-19 while incarcerated.  (*See* Def.

Mot.)  To date, Mr. Garcia has served approximately half of his 17½ year sentence, having been in custody since he was remanded following the guilty verdict at the end of July 2012.  Assuming the award of full good time credit, Mr. Garcia is scheduled for release on June 18, 2027.

## LEGAL STANDARD

The First Step Act creates an exception to the general prohibition against modifying a term of imprisonment once it has been imposed.  Pursuant to the First Step Act, defendants may move a court to "reduce" a term of imprisonment, which the court may grant "after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable," upon a finding that "extraordinary and compelling reasons warrant such a reduction[.]"  18 U.S.C. § 3582(c)(1)(A)(i).  The court may only modify a sentence "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  *Id.*

Congress has delegated responsibility to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).  The Sentencing Commission has

determined that a defendant's circumstances meet the
extraordinary and compelling standard, *inter alia*, when the
defendant is "suffering from a terminal illness" or a "serious
physical or medical condition ... that substantially diminishes
the ability of the defendant to provide self-care within the
environment of a correctional facility," or if, in the judgment
of the BOP, the defendant's circumstances are extraordinary and
compelling for "other reasons."  U.S.S.G. § 1B1.13(1)(A) &
Application Note 1(A), (D).  In addition, the Sentencing
Commission counsels that a court should reduce a defendant's
sentence only after determining that "[t]he defendant is not a
danger to the safety of any other person or to the community."
U.S.S.G. § 1B1.13(2).

The Second Circuit held that district courts have
"discretion to consider whether any reasons are extraordinary
and compelling," and that "[n]either Application Note 1(D), nor
anything else in the now-outdated version of [U.S. Sentencing
Commission] Guideline § 1B1.13, limits the district court's
discretion" to do so.  *United States v. Brooker*, No. 19-cr-3218,
2020 WL 5739712, at *7 (2d Cir. Sept. 25, 2020).[1]  A "district
court's discretion in this area—as in all sentencing matters—is

---

[1]    The government argues that *United States v. Brooker* was "wrongly
decided."  (Gov't Opp. at 5.)  The government is entitled to its view of the
Second Circuit's decision, but this court is bound to apply Second Circuit
law.

broad." *Id.* at *8.  "The only statutory limit on what a court may consider to be extraordinary and compelling is that 'rehabilitation *alone* shall not be considered an extraordinary and compelling reason.'"  *Id.* (quoting 28 U.S.C. § 994(t) (emphasis in original, alterations omitted)).

"The defendant carries the burden of showing that he or she is entitled to a sentence reduction under the statute." *United States v. Schultz*, 2020 WL 2764193, at *2 (W.D.N.Y. May 28, 2020) (citing *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020)).  "Even if a defendant carries this burden, district courts have broad discretion in deciding whether to grant or deny a motion for a sentence reduction." *United States v. Cato*, No. 16-cr-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020) (internal quotation marks omitted).

## DISCUSSION

The government does not dispute that Mr. Garcia exhausted the administrative remedies available to him. (*See* Gov't Opp. at 4.)  The question before the court, therefore, is whether Mr. Garcia has shown "extraordinary and compelling reasons" that would warrant a reduction of his custodial sentence, after "considering the factors set forth in section 3553(a) to the extent that they are applicable[.]"  18 U.S.C. § 3582(c)(1)(A)(i).

## I.  Mr. Garcia's Medical Conditions and the Conditions of Confinement

In his *pro se* motion, Mr. Garcia moves for a reduction of his sentence on two grounds: (1) his medical conditions and fear of re-contracting COVID-19, and (2) the conditions of his confinement at CI North Lake.  First, the defendant indicated that he has a "deteriorated medical condition after contracting COVID-19 while incarcerated" and that it is "highly unlikely that he will survive were he to contract the virus" again.[2] (Def. Mot. at 1-2.)  Mr. Garcia described the conditions of his incarceration at CI North Lake and asserts that he cannot protect himself against COVID-19 because: (1) he is in close contact with other inmates during meals and in the mess hall; (2) he is also in contact with correctional officers who are exposed to symptomatic inmates.  (*Id.* at 3-4.)  Thus, Mr. Garcia asserts that he cannot "administer the self-care he requires to avoid recontacting [sic] COVID-19 while incarcerated" at CI North Lake.  (*Id.* at 4.)

---

[2]    In an attachment to the supplemental briefing, Mr. Garcia also provided a letter to the Court describing his painful symptoms and experience while contracting COVID-19.  (*See* ECF No. 215-6, Ex. F., Defendant's Letter, at 5 (defendant describing the "worse moments of [his] life started with high fever, cold, shaking, terrible headache, and pain in the whole body, coughing, and difficulty to breath, I felt that I was drowning.")  The court acknowledges Mr. Garcia's painful experience with COVID-19 and is relieved to hear that Mr. Garcia has appeared to recover, with the exception of some lingering headaches and memory loss.  (Def. Supplement at 10; ECF No. 216-2, Ex. D, Problem List, at 3.)

In the supplemental briefing, Mr. Garcia's counsel emphasizes that "Mr. Garcia's age and myriad health issues, including a history of cancer, hyperlipidemia, cardiac history, history of liver disease, morbid obesity, and his prior stroke, make him vulnerable to COVID-19." (Def. Supplement at 5.)  Mr. Garcia also had endometrial polyp removal, and appears to suffer from, among other things, gout, lumbago, chronic knee pain, esophageal reflux, hyperlipidemia, memory loss, recurring headaches, and morbid obesity.  (*Id.* at 5-6.)  Defense counsel also notes that although presently no inmates are reported to have COVID-19 at CI North Lake, 2 inmates have died and 123 inmates have recovered from COVID-19 since the beginning of the pandemic.  (*Id.* at 6-7.)  Mr. Garcia's counsel also reiterates that the conditions of confinement limit Mr. Garcia's ability to "provide self-care" as noted in the defendant's *pro se* motion. (*Id.* at 10-11.)

In response to the *pro se* motion, the Government counters that defendant's medical history and Federal Bureau of Prisons ("BOP") medical records do not establish that there are extraordinary and compelling reasons justifying early release from incarceration.  (Gov't Opp. at 6-7.)  Further, the Government argues that by having already contracted COVID-19, Mr. Garcia's fears of reinfection are "unlikely to be realized"

and do "not warrant his immediate release from custody."   (*Id.* at 9.)

Having reviewed the defendant's *pro se* motion, his counsel's supplemental briefing, and supporting submissions, the court concludes that Mr. Garcia's age, medical conditions, and the conditions of confinement at CI North Lake do not provide "extraordinary and compelling" reasons warranting release.

First, with respect to Mr. Garcia's medical conditions, although the court acknowledges that Mr. Garcia has a history of medical illnesses and presently has some conditions that place him at a heightened risk from COVID-19 (e.g., liver disease, stroke, memory loss, history of cancer, cardiac condition, obesity, high cholesterol), the medical records note that Mr. Garcia does not currently suffer from any particularly serious medical conditions placing him at heightened risk of an adverse re-infection from COVID-19.[3]  Indeed, the records from CI North Lake describe Mr. Garcia as a "Care 1 Mental Health" and "Stable, Chronic Care" inmate.  (*See* ECF No. 215-6, Individualized Needs Plan, at 2.)  The medical records indicate that Mr. Garcia is in "[s]table condition with no changes necessary," is taking medication to monitor his high cholesterol, and was also referred "to psychology for

---

[3]     *See People at Increased Risk*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited Apr. 21, 2021).

eval[uation] & possible memory testing." (*See* ECF No. 216-2,
Ex. D, Medical Records, at 4; ECF No. 216-3 at 12-15; *see also*
*id.* at 21 (noting that defendant complained of headaches but
indicating that "Inmate is in no distress . . . heart sounds are
regular. Lungs are clear bilateral anterior and posterior.
Distal pulses are strong bilateral"); ECF No. 216-4 at 9
(Despite complaining of esophageal reflux and memory loss,
defendant was "[a]lert and oriented. Well developed male in no
acute distress.") There is no evidence that Mr. Garcia's memory
issue has impaired his ability to function within the
institution. As part of his chronic care treatment plan, Mr.
Garcia was directed to "[d]iet/exercise to maintain or lose
weight" as a long term goal to reduce his high cholesterol.
(ECF No. 216-3 at 16.) The objective medical evidence,
including lab reports and x-rays, do not present abnormal
findings.

        Thus, the medical records do not indicate that Mr.
Garcia presently suffers from his serious prior illnesses, such
as colon cancer or cerebral ischemia, which would place him in a
severe risk category according to the Centers for Disease
Control & Prevention (the "CDC"). Moreover, at age 62, Mr.
Garcia does not fall within the age group identified by the CDC
as being the most at risk (65 years and older). Accordingly,
although the court is sympathetic that Mr. Garcia experienced

painful COVID-19 symptoms and is relieved that he has recovered, the court concludes that Mr. Garcia's history with COVID-19 and any risks associated with his current medical conditions do not present "extraordinary and compelling reasons" warranting a reduction of Mr. Garcia's below-Guidelines sentence.  The court is mindful of Mr. Garcia's experience with COVID-19 but is also mindful that a showing of an "extraordinary and compelling" reason is necessary to modify a sentence.

District courts in this Circuit have held that contracting COVID-19 in prison, by itself, does not constitute an "extraordinary and compelling" reason warranting a sentence reduction.  *See United States v. Gray*, No. 08-cr-421 (BMC), 2021 WL 293380, at *3 (E.D.N.Y. Jan. 28, 2021) (denying compassionate release to defendant who had contracted COVID-19 in prison who was asymptomatic and who did not suffer from increased health risks); *United States v. Davis*, No. 12-cr-712, 2020 WL 3790562, at *3 (S.D.N.Y. July 7, 2020) (denying compassionate release because "the speculative risk of reinfection" was neither "extraordinary" nor "compelling" within the meaning of Section 3582).  Although defense counsel is correct in noting that some courts have granted compassionate release even when the defendant was previously ill with COVID-19 (*see* Def. Supplement at 7-8), this court concludes that Mr. Garcia's current medical conditions do not present "extraordinary and compelling reasons"

warranting a sentence reduction.  To be sure, medical records confirm that Mr. Garcia does not currently suffer from acute distress and does not have any preexisting conditions in severe risk categories recognized by the CDC, notwithstanding the aforementioned obesity, high blood pressure, and other medical conditions.

Second, as conceded by defense counsel, Mr. Garcia is presently incarcerated at a facility that has 0 active confirmed cases of COVID-19 (2 inmate deaths and 123 inmates recovered).[4] Although the court recognizes the notable hardships the COVID-19 pandemic has had on prison populations, the court notes that the BOP has taken measures to counter the spread of COVID-19 in the prison population[5] and also notes that defendant appears to be receiving adequate care to tend to his current medical conditions.  For these reasons, the court concludes that Mr. Garcia's age, medical conditions, and the conditions at CI North Lake do not provide "extraordinary and compelling" reasons warranting release.

---

[4]    *See* COVID-19 Cases, Federal Bureau of Prisons, Private Facilities, *available at* https://www.bop.gov/coronavirus/index.jsp (last accessed April 26, 2021).

[5]    *See* BOP Modified Operations, *available at* https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed April 21, 2021).

## II. Mr. Garcia's Rehabilitation

Next, in his supplement, Mr. Garcia asserts that his "clear record of rehabilitation" while incarcerated also supports his sentence reduction because "continued incarceration is not necessary to reform him." (Def. Supplement at 13.) In support of his request for a sentence reduction, Mr. Garcia attaches numerous letters of support from his family members as well as a certificate from an educational course completed in 2015. (*See* ECF Nos. 215-7, Ex. G, Letters of Support; 215-8, Ex. H, Certificate of Completion.)

The Second Circuit has acknowledged that although rehabilitation "alone" is insufficient as an "extraordinary and compelling reason," it can be considered with other circumstances to create an extraordinary and compelling reason for a sentence reduction. *Brooker*, 976 F.3d at 238; *see United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020) (finding defendant had established extraordinary and compelling reasons for a sentence reduction based on his underlying health conditions which placed him at a high risk for severe illness from COVID-19, the impact of the pandemic on the harshness of defendant's sentence, and his "total rehabilitation").

The court commends Mr. Garcia for his commitment to rehabilitation and reintegration into society. In reviewing the numerous letters of support, the court notes that these letters

14

highlight many positive attributes Mr. Garcia possesses, including his devotion to his family, his role as a caregiver, his strong work-ethic, and his mentorship to his children. (*See* ECF No. 215-7.) Despite these positive steps towards rehabilitation, however, this court cannot conclude that Mr. Garcia's circumstances rise to the level of "extraordinary and compelling" circumstances in which courts have granted a reduction in a defendant's sentence based on, among other factors, total rehabilitation. For example, in *United States v. Millan*, No. 91-cr-685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020), the defendant was a non-violent offender who had served more than 28 years of a life sentence imposed for his participation in a large-scale heroin distribution operation. Despite having had no realistic hope of release, the defendant conducted himself as a model prisoner, demonstrated exceptional character, and received support for a sentence reduction from the BOP staff at his facility. *See id.*; *see also Rodriguez*, 492 F. Supp. 3d at 311 (concluding that after 20 years' imprisonment, a reduction in the defendant's sentence was appropriate where the defendant provided "[a]n extraordinary collection of letters—from fellow inmates, family, friends, and, most important, 27 members of the prison staff" that made clear he was "wholly rehabilitated"). Here, unlike the circumstances present in the foregoing cases, Mr. Garcia's letters of support

15

from his family primarily describe his life outside of prison and do not speak to his rehabilitative efforts while incarcerated.  Moreover, as discussed above, this court concludes that Mr. Garcia's health and the conditions at CI North Lake do not provide "extraordinary and compelling" reasons warranting release.  For these reasons, although Mr. Garcia's efforts at rehabilitation are commendable, they do not constitute sufficiently "extraordinary and compelling" circumstances to warrant a reduction in his sentence.  *See United States v. Mirkovic*, No. 12-cr-691 (JFK), 2021 WL 1137980, at *4 (E.D.N.Y. Mar. 25, 2021).

The court is concerned for all inmates and recognizes the challenges of incarceration during an unprecedented global pandemic, but the court can only modify a sentence if "extraordinary and compelling" reasons are presented.  For the foregoing reasons, Mr. Garcia has failed to demonstrate "extraordinary and compelling" reasons arising from his health, the conditions at CI North Lake, or his rehabilitation efforts, as required to grant a sentence reduction.

### III. The Sentencing Section 3553(a) Factors

Even if extraordinary and compelling reasons existed, the Section 3553(a) factors counsel against reducing Mr. Garcia's sentence.  In assessing a motion for compassionate release, the court must also give consideration to the relevant

16

sentencing factors set forth in Title 18 United States Code
Section 3553(a), which include, *inter alia*: "the nature and
circumstances of the offense," "the history and characteristics
of the defendant," and "the need for the sentence imposed . . .
to reflect the seriousness of the offense, to promote respect
for the law, and to provide just punishment for the offense[.]"
18 U.S.C. § 3553(a)(1)-(2).

Having considered the relevant sentencing factors
under § 3553(a), the court concludes that granting Mr. Garcia's
sentence reduction now, after he has served approximately half
of his 17½ years sentence, would not "promote respect for the
law," nor "provide just punishment for the offense[s.]"  18
U.S.C. § 3553(a)(2)(A).  Furthermore, the nature and the
circumstances of the crime Mr. Garcia was convicted of and his
criminal history weigh against his release.

First, at sentencing, Judge Gleeson considered the
serious nature of Mr. Garcia's crime and the large amount of
money Mr. Garcia laundered on behalf of drug kingpins and other
high-ranking cartel members.  (*See* ECF No. 211, Sentencing Tr.
at 19-20.)  Specifically, Judge Gleeson discussed how Mr. Garcia
immersed himself "in an integral part of the narcotics
trafficking of some of the most notorious and dangerous
narcotics traffickers in the world" and that Mr. Garcia's
activities, although not directly involving handling the drugs,

were only marginally distinguishable from the actions of the "drug traffickers themselves." (*Id.* at 19:9-13, 20:1-6.) Notably, Judge Gleeson distinguished this case, which involved a considerable amount of money laundered, from other cases where the amount of intended loss in a fraud case or quantity of drugs in a drug case, drove the Guidelines higher than necessary or sufficient for sentencing purposes. (*Id.* at 18.) Judge Gleeson reasoned that "the amount of laundered funds" was likely a better measure of culpability, and that the severity of the instant crime was serious due to the large amount of money Mr. Garcia laundered. After considering all the factors set forth in § 3553(a), Judge Gleeson departed from the Guidelines recommended range of 235 to 240 months' imprisonment, and sentenced defendant to 210 months' (17½ years) of imprisonment. (*Id.* at 22:6-11.) Here, for the reasons noted by Judge Gleeson, the court also agrees that the nature and circumstances of Mr. Garcia's crime weigh against his release because the defendant served as a key money launderer for some of the leading international narcotics traffickers and cartels.[6]

Second, the defendant also had a history of criminal activity before his sentencing. At sentencing, Mr. Garcia

---

[6]    Moreover, the Court respectfully rejects defense counsel's argument that Mr. Garcia's sentence was unfair in comparison to the co-conspirators' sentences. (*See* Def. Supplement at 14-15.) As explained at the defendant's sentencing, Judge Gleeson carefully reviewed the relevant factors in § 3553(a) and imposed a below-Guidelines sentence after thorough consideration.

already had a long criminal history resulting in the Criminal

History Category III.  These prior crimes include: a conviction

in 1994 for possession of a loaded firearm, and a conviction in

1995 for structuring cash deposits.  (PSR ¶¶ 21, 24.)

Furthermore, Judge Gleeson also imposed an obstruction of

justice enhancement at sentencing because defendant falsely

testified that he was not engaged in money laundering at trial.

(Sentencing Tr. at 7:11-18.)

        Given both Mr. Garcia's serious offense of conviction

and criminal history, the purposes of sentencing -- including

punishment, deterrence, rehabilitation and protection of the

public -- would not be served by Mr. Garcia's release from

prison when he has completed approximately half of the term of

imprisonment Judge Gleeson imposed in 2013.  To release Mr.

Garcia this early in his term -- six years before his scheduled

release date of June 18, 2027 -- would disserve the important

§ 3553(a) factors underlying the sentence imposed.  *See United

States v. Lovick*, No. 18-cr-834-5 (PAE), 2020 WL 5237349, at *3

(S.D.N.Y. Sept. 2, 2020) (collecting cases where courts denied

compassionate release where defendants served less than 50% of

term of imprisonment).  Accordingly, the court concludes that

Mr. Garcia's criminal history is significant, and the nature and

circumstances of Mr. Garcia's offense were serious and further,

that the seriousness of the offense undermines Mr. Garcia's

claim that he will not pose a risk of danger to the community if released.

The court is hopeful that Mr. Garcia will be able to make the transition to a law-abiding life when his sentence is completed.  But the court must consider whether granting defendant's application would promote respect for the law and provide just punishment, and concludes that it would not. Moreover, the court must consider the dangers to the community and finds that the circumstances of Mr. Garcia's offense of being a money launderer for narcotics traffickers and cartels are serious.  Accordingly, the sentencing factors set forth in § 3553(a), which the Judge Gleeson carefully considered at the time of sentencing as warranting a custodial sentence 17½ years' imprisonment, do not warrant a reduction in sentence at this time.

**CONCLUSION**

For the foregoing reasons, Mr. Garcia's motion for a sentence reduction is respectfully DENIED.  Mr. Garcia has not made a showing of "extraordinary and compelling reasons" warranting a modification of his sentence, nor do the statutory sentencing factors weigh in favor of a modification.

SO ORDERED.

_____/s/_____
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York

Dated:     Brooklyn, New York
           April 26, 2021