UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

UNITED STATES OF AMERICA,

    - against -

LUIS GARCIA,

          Defendant.

----------------------------------X

**MEMORANDUM & ORDER**
09-cr-330 (KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

    Luis Garcia, who is currently serving a 210-month sentence at Federal Correctional Institution (FCI) Fort Dix, moves for release pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons stated below, the Court respectfully denies Mr. Garcia's motion.

**BACKGROUND**

    Mr. Garcia previously moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 202, Former Mot. for Compassionate Release ("Former Mot.")), which this Court denied. *See United States v. Garcia*, No. 09-cr-330 (KAM), 2021 WL 1616914 (E.D.N.Y. Apr. 26, 2021), *aff'd*, No. 21-1181, 2022 WL 2154675 (2d Cir. June 15, 2022) (summary order). The Court assumes the parties' familiarity with the factual background of this matter and will discuss background information only insofar as it has bearing on Mr. Garcia's motion. The Court's April 26, 2021 opinion, *Garcia*, 2021 WL 1616914, is incorporated by reference.

    On July 25, 2012, a federal jury found Mr. Garcia guilty

of conspiring to launder money in violation of 18 U.S.C. § 1956(h) (ECF No. 125, Jury Verdict Sheet.)  He was sentenced to 210 months of imprisonment, to be followed by three years of supervised release.  (ECF No. 156, Minute Entry.)

On December 14, 2020, Mr. Garcia filed his first motion for a sentence reduction under § 3582(c)(1)(A) on the basis that he had already contracted COVID-19 once and was at higher risk of reinfection and severe medical consequences from reinfection due to his age and deteriorated medical conditions.  (*See* Former Mot.) This Court respectfully denied Mr. Garcia's motion, concluding that his case did not present "extraordinary and compelling reasons" warranting release, and that the § 3553(a) factors weighed against reducing Mr. Garcia's sentence. *Garcia*, 2021 WL 1616914, at *5-7.

On February 5, 2024, Mr. Garcia, acting *pro se*, filed the instant motion for compassionate release, arguing that extraordinary and compelling reasons warrant a reduction of his sentence to time served, and that the § 3553(a) factors do not prevent a sentence reduction.  (ECF No. 222, Mot. for Compassionate Release ("Mot.").)  On May 3, 2024, Mr. Garcia's counsel submitted a supplemental memorandum in support of Mr. Garcia's *pro se* motion. (ECF No. 227, Suppl. Mem. in Supp. of Sentence Reduction ("Supp. Mot.").)  On June 28, 2024, the United States (the "Government") filed its response in opposition to Mr. Garcia's instant motion.

2

(ECF No. 230, Government's Letter in Opposition ("Opp.").)

To date, Mr. Garcia has served approximately two-thirds of his 210-month sentence, having been in custody since he was remanded following the July 2012 guilty verdict.  The Bureau of Prisons ("BOP") presently estimates that Mr. Garcia will be released on June 18, 2026.

## LEGAL STANDARD

Section 3582(c)(1)(A) creates an exception to the general rule that a federal district court may not modify a term of imprisonment after it has been imposed.  Four requirements must be satisfied before a court may modify a defendant's sentence pursuant to § 3582(c)(1)(A): (1) the defendant must exhaust administrative remedies by requesting compassionate release from prison authorities, or the Government must waive administrative exhaustion; (2) the defendant must demonstrate "extraordinary and compelling" reasons that warrant a sentence reduction; (3) the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable; and (4) the court must find that a reduction is consistent with U.S. Sentencing Guidelines ("U.S.S.G.") § 1B1.13.  *See United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (citing *United States v. Saladino*, 7 F.4th 120, 124 (2d Cir. 2021); *United States v. Jones*, 17 F.4th 371, 374-75 (2d Cir. 2021)); *see also Saladino*, 7 F.4th at 123 (citing *Hamer v. Neighborhood Hous. Servs.*, 583 U.S. 17, 20

(2017)); *United States v. Brooker*, 976 F.3d 228, 236-37 (2d Cir. 2020) (noting inapplicability of prior version of U.S.S.G. § 1B1.13); *United States v. Saez*, No. 16-cr-317 (PAE), 2024 WL 303847, at *3-4 (S.D.N.Y. Jan. 26, 2024) (holding amended U.S.S.G. § 1B1.13 "controls a court's analysis of a . . . petition for compassionate release"); *United States v. Messina*, No. 11-cr-31 (KAM), 2024 WL 2853119, at *3 (E.D.N.Y. June 4, 2024) (citing *Saez*, 2024 WL 303847, at *3) (same).

U.S.S.G. § 1B1.13(b) enumerates six circumstances that, when considered either individually or in combination, a court may find amount to extraordinary and compelling reasons. Relevant to the instant motion are the provisions concerning medical circumstances and the age of a defendant. One circumstance provided by § 1B1.13(b) that may constitute extraordinary and compelling reasons is a serious and advanced illness with an end-of-life trajectory. U.S.S.G. § 1B1.13(b)(1)(A) (providing, as examples, metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-state organ disease, and dementia). Other medical conditions that "substantially diminish the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" may also qualify, *id.* § 1B1.13(b)(1)(B), as may conditions that "require[] long-term or specialized medical care that is not being provided and without which the defendant is at

4

risk of serious deterioration in health or death," *id.* § 1B1.13(b)(1)(C). Extraordinary and compelling reasons may also exist if the defendant is at least 65 years old, "experiencing a serious deterioration in physical or mental health because of the aging process" and has served at least 10 years or 75 percent of their sentence, whichever is less. *Id.* § 1B1.13(b)(2). The guidance includes a "catch-all" provision allowing a court to consider "any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4) [of § 1B1.13(b)], are similar in gravity to those described in paragraphs (1) through (4)." *Id.* § 1B1.13(b)(5). In addition to guiding courts in determining whether extraordinary and compelling reasons warrant a sentence reduction, § 1B1.13 also provides that a court should reduce a defendant's sentence only after determining that "the defendant is not a danger to the safety of any other person or to the community," *id.* § 1B1.13(a)(2).

The Court must also consider the 18 U.S.C. § 3553(a) factors when evaluating a motion pursuant to § 3582(c)(1)(A) and determine "whether the relevant factors outweigh the 'extraordinary and compelling reasons' warranting compassionate release and whether compassionate release would undermine the goals of the original sentence." *Messina*, 2024 WL 2853119, at *3 (quoting *United States v. Daugerdas*, 613 F. Supp. 3d 807, 812

(S.D.N.Y. 2020)).

A defendant bears the burden of showing extraordinary and compelling circumstances and that a reduction is warranted under 18 U.S.C. § 3553(a) sentencing factors. *See Jones*, 17 F.4th at 375 (citing *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992)); *Keitt*, 21 F.4th at 71.

**DISCUSSION**

**I.   Exhaustion**

A defendant may move for compassionate release after the earlier of (1) exhausting all administrative rights to appeal a failure by the BOP to file a motion on behalf of the defendant or (2) the lapse of thirty days from the receipt of any such request by the warden. 18 U.S.C. § 3582(c)(1)(A). This exhaustion requirement is not jurisdictional, and it may be waived by the government. *See Saladino*, 7 F.4th at 123 (citing *Hamer*, 583 U.S. at 20).

Mr. Garcia offers evidence that he requested that the BOP move for compassionate release on his behalf and that his request was denied by the warden of FCI Fort Dix. (Mot. ¶ 37 & nn.12-14; *id.* exs. G & H.) Mr. Garcia claims that his appeal was rejected, and requests "that the Court waive *further exhaustion*." (*Id.* ¶ 37 (emphasis in original).) The Government does not dispute that Mr. Garcia has exhausted his administrative remedies. (*See* Opp. at 14.) The Court therefore finds that Mr. Garcia has

exhausted his administrative remedies as required by § 3582(c)(1)(A).

## II.  Extraordinary and Compelling Reasons

### A.  Age and Medical Condition

In arguing that extraordinary and compelling reasons warrant a modification of his sentence, Mr. Garcia relies on both his medical circumstances, U.S.S.G. § 1B1.13(b)(1), and his age, *id.* § 1B1.13(b)(2).  (*See* Mot. ¶¶ 16-20; Supp. Mot. at 5-11.[1])  As relevant here, these provisions require the Court to assess Mr. Garcia's physical and mental health and the extent to which any condition or deterioration is serious or terminal, U.S.S.G. § 1B1.13(b)(1)(A), (b)(2); whether it substantially diminishes his ability to provide self-care within a correctional facility, *id.* § 1B1.13(b)(1)(B); whether he is expected to recover, *id.*; and whether long-term or specialized medical care is required and the consequences of failing to receive that care, *id.* § 1B1.13(b)(1)(C).  When considering § 1B1.13(b)(1)(B)(iii) and (b)(2), the Court must assess whether the deterioration in physical or mental health at issue is caused by the "aging process."

---

[1] Mr. Garcia's submissions cite to application notes that no longer exist in the current version of the Guidelines.  The relevant application notes from the prior version of § 1B1.13 have been adopted as subsections of the current version of § 1B1.13, which became effective as of November 1, 2023.  The Court therefore construes each instance where Mr. Garcia's submissions refer to an application note of § 1B1.13 to instead refer to the corresponding subsection of the current U.S.S.G. provision. *See Messina*, 2024 WL 2853119, at *3 (citing *Saez*, 2024 WL 303847, at *3) (finding amended guidance controls).

In his *pro se* motion, Mr. Garcia contends that his "congestive heart failure is 'a serious and advanced illness with an end-of-life trajectory.'" (Mot. ¶ 16.) He writes that his heart vessels suffer from a ten to twenty percent tubular stenosis, and that he experiences shortness of breath, chest pain, fatigue, fluttering, rapid heartbeats, and difficulty walking short distances. (*Id.* ¶ 2.) Additionally, Mr. Garcia describes how chest pressure and pain severely limit his daily activities, making it difficult to complete tasks such as making his bed, washing his hair, watching TV, or having a conversation with a friend. (*Id.* ¶¶ 5–6.) He writes that "despite the overwhelming amount of multiple symptoms, the [BOP] has only treated them with medication, and has failed to even remotely suggest any type of immediate medical intervention." (*Id.* ¶ 3.) Immediate treatment other than medication is required, Mr. Garcia argues, because his "constant chest pains, fatigue and other symptoms suggest that [his] condition is worse than previously believed." (*Id.* ¶ 7 (citing *Watchful Waiting for Aortic Valve Disease*, NYU Langone Health, https://nyulangone.org/conditions/aortic-valve-disease/treatments/watchful-waiting-for-aortic-valve-disease (last visited Dec. 4, 2024) ("If your condition worsens, treatment begins immediately to prevent damage to the heart.")); *see id.* ¶ 18 ("the appearance of physical symptoms require[s] the condition be treated with methods other than medication").) Mr. Garcia asserts

8

that the damage caused by BOP's alleged failure to properly assess his condition will be irreversible, and adds that half of patients with aortic stenosis will die within two years of the appearance of symptoms "[a]t its worse [*sic*] stage." (*Id.* ¶¶ 8-9 (citing *Don't Wait to Act*, Edwards Lifesciences Corp., https://treatheartvalvefailure.com/about-heart-valve-failure/dont-wait (last visited Dec. 4, 2024)).[2]

Although he has received "numerous treatments for his heart condition," Mr. Garcia writes that his condition is progressing at an alarming rate. (*Id.* ¶ 17.) He now suffers chest pains whenever he walks, sits, washes his hair, or makes his bed. (*Id.* ¶ 18.) In addition to his concerns about his chest pains, Mr. Garcia writes that he suffers from "other ailments such as hypertension, gastroesophageal reflux disease, hyperlipidemia, degenerative joint disease, morbid obesity, high cholesterol, gout, lower back pain, and glaucoma." (*Id.* ¶ 17.) In sum, Mr. Garcia argues that his artery disease constitutes an extraordinary and compelling reason to modify his sentence. (*Id.* ¶¶ 19-20.)

In his supplemental motion, Mr. Garcia, through his counsel, emphasizes that his circumstances have changed significantly since this Court denied his former § 3582 motion in

---

[2] Mr. Garcia's motion includes a citation to a webpage that does not appear to exist. (Mot. ¶ 9 n.8.) The webpage cited above is maintained on the same domain and contains a statistic similar to the one in Mr. Garcia's motion.

April 2021.  (Supp. Mot. at 1, 5.)  Mr. Garcia argues that because he is now 65 years old, has served at least ten years of his sentence, and is experiencing a serious deterioration in physical health because of the aging process, he meets the criteria of extraordinary and compelling reasons warranting release set out in § 1B1.13(b)(2).  (*Id.*)  Mr. Garcia writes that his medical records show that he presently suffers from atherosclerotic heart disease, angina pectoris, and coronary vasospasms, and that he has been ordered to take medications including metoprolol, isosorbide mononitrate, and nitroglycerin to treat his heart condition.  (*Id.* at 6-7.)  In addition to his "deteriorating cardiac condition," Mr. Garcia emphasizes his prior health conditions, including liver disease, stroke, memory loss, history of cancer, obesity, and high cholesterol.  (*Id.* at 10 (citing *Garcia*, 2021 WL 1616914, at *4).)  He argues that "taken as a whole," Mr. Garcia's medical record "demonstrates a significant, ongoing decline in his health as he ages, meriting compassionate release."  (*Id.*)

In response, the Government argues that Mr. Garcia fails to show "extraordinary and compelling" reasons because he is not on an end-of-life trajectory, his condition has not substantially diminished his ability to provide self-care within a correctional facility, and he is not experiencing a serious deterioration in physical or mental health because of the aging process.  (Opp. at 15.)  The Government argues that statements to the contrary in

Mr. Garcia's motion are belied by his medical records, "which contain no indication of any . . . ailments beyond chest pain, and one clinical encounter in which Garcia reported fluttering and palpitations." (*Id.*) The Government writes that, while Mr. Garcia has been diagnosed with angina and proximal tubular stenosis (*id.* at 8, 17-18), he has not been diagnosed with heart failure, severe aortic stenosis, or heart valve failure. (*Id.* at 9, 17.) The Government notes that atherosclerosis, coronary artery disease and angina are common among Mr. Garcia's age group. (*Id.* at 17.) Lastly, the Government contends that there is no indication that the BOP is not adequately managing Mr. Garcia's medical conditions, including his heart condition, highlighting the steps taken by the BOP such as cardiology consults with outside doctors on four occasions between November 2022 and March 2024. (*Id.* at 18.)

Turning first to U.S.S.G. § 1B1.13(b)(2), this subsection provides that extraordinary and compelling circumstances exist if the defendant (1) is at least 65 years old, (2) has served at least 10 years of his term of imprisonment, and (3) "is experiencing a serious deterioration in physical or mental health because of the aging process." There is no dispute that Mr. Garcia satisfies the first two criteria of § 1B1.13(b)(2) due to his age and period of imprisonment. (Supp Mot. at 9; Opp. at 15.) The only matter in dispute is whether Mr. Garcia is experiencing a serious deterioration in physical or mental health

11

because of the aging process.

In contrast to § 1B1.13(b)(1) -- which requires the defendant to demonstrate suffering from a terminal illness, a condition that "substantially diminishes the ability of the defendant to provide self-care," or a condition that requires long-term or specialized medical care -- § 1B1.13(b)(2) only requires that the age-related deterioration be "serious" to qualify for a sentence reduction. The contrast between § 1B1.13(b)(1) and (b)(2) "reveals that a defendant need not have lost all ability to provide self-care or be suffering from a terminal illness to qualify for relief under [§ 1B1.13(b)(2)]." *See United States v. Ebbers*, 432 F. Supp. 3d 421, 428 (S.D.N.Y. 2020) (reaching this conclusion following analysis of application notes in prior version of Guidelines); *United States v. Hansen*, No. 07-cr-520 (KAM), 2020 WL 1703672, at *7 (E.D.N.Y. Apr. 8, 2020) (citing *Ebbers*, 432 F. Supp. 3d at 428) (same). Assessing whether a defendant is experiencing "a serious deterioration in physical or mental health due to the aging process" is a "fact-intensive analysis." *Ebbers*, 432 F. Supp. 3d at 428.

Here, after a thorough examination of Mr. Garcia's medical records, the Court respectfully concludes that his conditions do not constitute a "serious deterioration in physical or mental health" as required by § 1B1.13(b)(2). The record before the Court instead demonstrates that Mr. Garcia is experiencing

unfortunate but common and non-serious age-related health conditions that are being appropriately managed and treated by the BOP. Because Mr. Garcia's conditions do not meet the more lenient standard imposed by § 1B1.13(b)(2), they necessarily fail to meet the more searching standards imposed by § 1B1.13(b)(1). As his age and medical conditions do not satisfy any of these standards, Mr. Garcia fails to demonstrate extraordinary and compelling reasons that warrant a sentence reduction.

First, contrary to Mr. Garcia's assertion, his medical records do not indicate that he was diagnosed with congestive heart failure. (*See* Mot. exs. A-D.) Nor do the medical records before the Court reveal that Mr. Garcia has been diagnosed with severe aortic stenosis or with heart valve failure. (*See* Opp. ex. 2 at 4 (provisional diagnosis of stable angina); *id.* ex. 6 at 1 (diagnosis of unstable angina); *id.* ex. 14 at 1 (diagnosis of unspecified chest pain); *id.* ex. 16 at 1 (diagnosis of atherosclerotic heart disease with other forms of angina); *see also id.* ex. 3 at 8, 12 (noting history of heart disease and hyperlipidemia); Mot. ex. D at 1 (assessment of angina equivalent and chest pain).) To be sure, on December 23, 2022, a BOP healthcare provider entered a note assessing Mr. Garcia as having unspecified heart failure. (Opp. ex. 5 at 1; Mot. ex. A at 1.) This note was not entered based on a face-to-face encounter with Mr. Garcia, but instead was entered based on the BOP healthcare

provider's review of a prior consultation that Mr. Garcia had with a non-BOP cardiologist. (*See* Opp. at 8-9.) The non-BOP cardiologist themselves did not diagnose Mr. Garcia with heart failure but instead reported that although it was "difficult to determine the cause of patient's symptoms," it was "certainly possible that he has developed coronary disease in the interim." (*Id.* ex. 4 at 1.) On January 30, 2023, Mr. Garcia underwent a cardiac catheterization. (*Id.* ex. 6 at 1.) The note recording this procedure does not report a diagnosis or impression of heart failure, but instead reports a diagnosis of unstable angina, and impressions of nonobstructive coronary artery disease as well as hyperlipidemia. (*Id.* ex. 6 at 1, 3.) Read as a whole, the record before the Court does not show that Mr. Garcia was diagnosed with heart failure based on any diagnostic procedure or examination, but instead tends to show that he was, and is continuing to be, successfully treated for his unfortunate but relatively common chest pains.

Second, conditions that healthcare providers have observed when treating Mr. Garcia -- such as non-obstructive coronary artery disease and aortic stenosis -- do not appear to have manifested at serious levels. After reviewing the results of Mr. Garcia's cardiac catheterization, a cardiologist concluded that Mr. Garcia's coronary artery disease was non-obstructive. (Mot. ex. B at 4; Opp. ex. 6 at 4.) Similarly, although Mr. Garcia

14

was diagnosed with aortic stenosis, his condition, with a stenosis of ten to twenty percent (Mot. ex. B at 2), does not constitute severe aortic stenosis.[3]  Here, Mr. Garcia's conditions do not constitute a serious deterioration in physical health for purposes of § 1B1.13(b)(2), and thus they necessarily do not constitute a "terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory)" for purposes of § 1B1.13(b)(1)(A).

Mr. Garcia nevertheless argues that other courts within the Second Circuit have granted sentence reductions to elderly defendants with comparable medical conditions. (Supp. Mot. at 10.) Mr. Garcia's medical records, however, do not show that his mental and physical health has deteriorated to a similar extent as defendants considered in the other cases that he cites. For example, in *United States v. Hansen*, this Court granted a 72-year-old defendant's § 3582 motion, finding that his medical records

---

[3] *See* Janelle M. Guirguis-Blake et al., Kaiser Permanente Evidence-based Prac. Ctr., *Screening for Asymptomatic Carotid Artery Stenosis in the General Population* 1 (Feb. 2021), https://www.ncbi.nlm.nih.gov/books/NBK567812/ ("The categories of stenosis severity which are historically based on duplex ultrasound estimates are as follows: moderate (50% to 69%) and severe (70% to 99%)[.]"); *Coronary Artery Disease*, Radiopaedia (Oct. 1, 2024), https://radiopaedia.org/articles/coronary-artery-disease ("1-24% = minimal stenosis . . . 70-99% = severe stenosis"); Karan Garg et al., Vascular & Endovascular Surgery Soc'y, *Severity of Stenosis in Symptomatic Patients Undergoing Carotid Interventions Might Influence Perioperative Neurologic Events*, 76 J. Vascular Surgery 741, 741 (2022) ("The patients were stratified into two groups according to stenosis severity—nonsevere (0%-69%) and severe (≥70%)."); Seemant Chaturvedi, Comment, *Is Surveillance for Restenosis Justified After Carotid Revascularisation?*, 17 The Lancet: Neurology 570, 570 (2018) ("The ICSS [International Carotid Stenting Study] investigators used a cutoff for peak systolic velocity of greater than 1.3 m/s to define moderate or higher (≥50%) stenosis and a cutoff of greater than 2.1 m/s to define severe (≥70%) stenosis.").

"overwhelmingly depict a body and mind besieged with mounting, serious afflictions," and that the defendant's condition "impaired his ability to function independently within the BOP facilities." *Hansen*, 2020 WL 1703672, at *8. In addition to a variety of serious health conditions, including cardiac conditions, the *Hansen* Court highlighted the defendant's alarmingly declining memory, which was corroborated by the medical record and witnesses, including BOP personnel. *Id.* In contrast, the report from Mr. Garcia's May 21, 2024 BOP health visit, the most recent medical record submitted by the parties, describes Mr. Garcia's general condition as "[w]ell-nourished, well-developed," "alert and oriented," and "in no acute distress." (Opp. ex. 17 at 2.) The same report comments that Mr. Garcia's cardiovascular system showed "[r]egular rate and rhythm, no murmurs, rubs, or gallops" and no JVD [jugular vein distention]." (*Id.*)[4]

---

[4] Other cases cited by Mr. Garcia are similarly inapposite. *See United States v. Salemo*, No. 11-cr-65 (JSR), 2021 WL 4060354, at *4 (S.D.N.Y. Sept. 7, 2021) (77-year-old defendant suffered from "multiple medical conditions including obesity, chronic obstructive pulmonary disorder (COPD), cataracts, and hypertension); *United States v. Copeland*, No. 02-cr-1120 (FB), 2020 WL 2537250, at *1 (E.D.N.Y. May 19, 2020) (67-year-old defendant suffered from hypertension, pre-diabetes, hyperlipidemia, latent tuberculosis, chronic hepatitis C, liver necrosis, and aortic atherosclerosis); *United States v. Campbell*, No. 09-cr-119-24 (AR), 2023 WL 7013388, at *3-4 (E.D.N.Y. Oct. 25, 2023) (68-year-old defendant suffered from degenerative back condition, mononeuropathy of lower limb, bilateral feet numbness and tingling, low back and hip pain, sciatica, type 2 diabetes, peripheral vascular disease, chronic kidney disease, retinopathy, acute upper respiratory infection, and high blood pressure); *United States v. Lugo*, No. 01-cr-922 (NG), 2022 WL 732153, at *4-5, *7-8 (E.D.N.Y. Mar. 11, 2022) (63-year-old defendant suffered acute stroke followed by dizziness and difficulty breathing); *United States v. Jimenez*, 212 F. Supp. 2d 214, 216 (S.D.N.Y. 2006) (defendant suffered from brain aneurism, hallucinations, severe memory loss); *see also United States v. York*, No. 11-cr-76, 2019 WL 3241166, at *6 (E.D. Tenn. July 18, 2019) (60-year-old defendant

For substantially the same reasons that Mr. Garcia has not shown that his conditions amount to a serious deterioration in his mental or physical health, they also do not amount to a deterioration that substantially diminishes his ability to provide self-care within the environment of a correctional facility as is required by § 1B1.13(b)(1)(B).  Mr. Garcia's submission and medical records instead reflect that he is receiving care for each of his cited conditions.  (*See generally* Opp. ex. 1-17).  And in instances where Mr. Garcia's pain has been most acute, he has been able to treat it by taking prescribed medication or seeking medical attention.  (*See, e.g.*, Mot. at ¶ 3 (medical professional prescribed nitroglycerin); *id.* ¶ 18 (Mr. Garcia took nitroglycerin to assist in making his bed); Opp. ex. 7 at 1 (Mr. Garcia sought and received medical attention for "continue[d] complain[t] of chest discomfort described as a squeezing/tightness sensation . . . .").)

The evidence provided to the Court similarly does not suggest that Mr. Garcia requires "specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death," as is required by § 1B1.13(b)(1)(C), and generally belies Mr. Garcia's contention that the BOP has failed to recommend more aggressive treatment

---

had been diagnosed with chronic, decompensated systolic heart failure and had suffered at least one heart attack while in BOP custody).

beyond medication, despite his symptoms and the concerns expressed by medical staff. (*See* Mot. ¶ 8.)  The record demonstrates that the BOP has taken significant measures to manage Mr. Garcia's heart condition, including referring him to an outside hospital for a catheterization, (Opp. ex. 6), and, in the only instance in which prescribed medication did not provide him with relief, sending him to the emergency room for further treatment and evaluation, (*id.* ex. 14).  Although Mr. Garcia has been evaluated by multiple external care providers, none of these providers has recommended any additional or alternative treatments that were not pursued by the BOP.

Courts considering defendants facing similar or worse deteriorations in their physical health than those suffered by Mr. Garcia tend to find that such conditions do not constitute extraordinary and compelling circumstances. *See, e.g.*, *United States v. Carrasco*, No. 19-cr-475-01 (NRB), 2023 WL 375183 at *2 (S.D.N.Y. Jan. 24, 2023) (denying compassionate release where defendant disclaimed any physical health problems when interviewed for his presentence investigation report and offered no other evidence to support his claim of heart problems); *United States v. Amuso*, No. 90-cr-446, 2023 WL 5153425, at *3 (E.D.N.Y. Aug. 10, 2023) (finding no extraordinary and compelling reasons based on the defendant's health conditions where "medical records reflect that the BOP is managing [defendant's] medical conditions

18

adequately by providing him with medications, x-rays, and medical appointments upon his request"); *United States v. Borelli*, No. 84-cr-63 (LAP), 2021 WL 2228075, at *3 (S.D.N.Y. June 2, 2021) (denying compassionate release where defendant "offered no indication that his medical conditions cannot be managed -- or, for that matter, are not already well controlled -- through BOP-provided medical care"); *United States v. LoCascio*, No. 90-cr-1051, 2020 WL 12719849, at *2, *4-6 (E.D.N.Y. July 17, 2020) (denying compassionate release to an 87-year-old defendant who had served at least 10 years in prison and who suffered an age-related deterioration in physical health, where BOP was able to "manage" the defendant's chronic kidney disease, coronary artery disease, and heart failure that left him in "chronic pain, dependent on oxygen and confined to a wheelchair"); *United States v. Castillo*, No. 03-cr-979 (KMW), 2023 WL 2262881, at *1-3 (S.D.N.Y. Feb. 28, 2023) (finding 65-year-old defendant who had spent 19 years in prison did not show "extraordinary and compelling" reasons despite suffering heart attack, enlarged prostate, eye problems, and ongoing heart disease).

Therefore, the Court concludes that Mr. Garcia's medical conditions do not constitute extraordinary and compelling reasons that warrant a reduction in his term of imprisonment.

**B.    Other Reasons**

In his supplemental motion, Mr. Garcia asserts that he

19

has "compiled a clear record of rehabilitation," and that data collected by the United States Sentencing Commission shows that "the likelihood that a person in his mid to late 60s will recidivate is extremely low." (Supp. Mot. at 11.) The Government in turn maintains that Mr. Garcia's record does "not present as one with such significant rehabilitation as to warrant compassionate release," arguing that Mr. Garcia has only taken two month-long education activity courses in addition to a parenting class and two hobby craft courses during the entire time of his incarceration. (Opp. at 22.)

As the Second Circuit noted in *Brooker*, rehabilitation alone cannot be considered an extraordinary and compelling reason, but it can be considered with other circumstances to create an extraordinary and compelling reason for a sentence reduction. *See Brooker*, 976 F.3d at 238; *see also United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y 2020) (finding defendant has established extraordinary and compelling reasons for a sentence reduction based on his underlying health conditions which placed him at a high risk for severe illness from COVID-19, the impact of the pandemic on the harshness of defendant's sentence, and his "total rehabilitation").

In the instant case, Mr. Garcia's lack of disciplinary infractions while in custody, completion of a parenting class, two hobby craft courses, and two month-long education courses, while

commendable, do not warrant a sentence reduction when considered independently or in combination with Mr. Garcia's age and medical conditions. *See, e.g.*, *Messina*, 2024 WL 2853119, at *8-9 (denying sentence reduction where defendant had completed "141 programs" including programs aimed at substance abuse).

The Court therefore finds that Mr. Garcia's circumstances do not constitute extraordinary and compelling reasons that warrant a reduction in his sentence, and for the same reasons, concludes that a reduction in Mr. Garcia's sentence would be inconsistent with § 1B1.13(b).

## III. Sentencing Factors

In addition to finding that Mr. Garcia's medical conditions do not constitute extraordinary and compelling reasons, the Court also finds that the sentencing factors in 18 U.S.C. § 3553(a) weigh against a sentence reduction, as previously discussed in the Court's prior decisions. *See Jones*, 17 F.4th at 374 (noting that non-precedential summary orders have "held that a district court's 'reasonable evaluation of the Section 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release." (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021); citing *United States v. Butler*, 845 F. App'x 74, 76-77 (2d Cir. 2021))).  In this Court's April 26, 2021 opinion, it concluded that the § 3553(a) factors weighed against Mr. Garcia's release, in particular because of the serious

nature of his offense due to his involvement in laundering large sums of money for drug traffickers and cartel members, and because of his criminal history, which before his conviction for the instant offense included convictions for possession of a loaded firearm and structuring cash deposits. *Garcia*, 2021 WL 1616914, at *6-7. In rejecting the argument that Mr. Garcia's sentence was unfair compared to his co-conspirators, the Court emphasized that Judge Gleeson, the sentencing judge in this case, carefully reviewed all relevant factors before imposing the sentence. *Id.* at *7. The Court concluded that the seriousness of Mr. Garcia's offense and his criminal background weighed against his release, and that granting his application for early release would neither promote respect for the law, nor provide just punishment, nor serve the purposes of sentencing, including punishment, deterrence, rehabilitation, and protecting the public. *Id.* The Second Circuit affirmed this Court's April 26, 2021 opinion, including its analysis of the relevant § 3553(a) factors. *See Garcia*, 2022 WL 2154675, at *2. The Court's prior § 3553(a) factor analysis remains equally pertinent to Mr. Garcia's instant motion, and the Court adopts and incorporates it here. The Court declines Mr. Garcia's apparent invitation to revisit, recharacterize, and ignore the evidence upon which he was convicted and sentenced. (*See* Mot. ¶¶ 23-35.)

In his instant motion, Mr. Garcia requests to be

immediately deported to his home country of Peru, where he argues he will be in a better position to manage his heart condition. (*Id.* at 13.) Courts in this Circuit have acknowledged that deportation is "a form of punishment itself" and have considered deportation a factor relating to "the history and characteristics of the defendant" under 18 U.S.C. § 3553(a)(1). *See United States v. Santos*, No. 01-cr-537 (ARR), 2022 WL 4325520, at *5 (E.D.N.Y. Sept. 19, 2022); *United States v. Rodriguez*, No. 05-cr-960 (JPO), 2022 WL 158685, at *5 (S.D.N.Y. Jan. 18, 2022) (stating that deportation would likely serve as a form of punishment for the defendant, given that their children and grandchildren reside in the United States). In this case, deportation would be a form of punishment as Mr. Garcia's wife and other family members, including his mother, two of his siblings, and his children currently reside in the United States. (*See* Mot. ex G; ECF No. 201, Presentence Investigation Report, ¶¶ 35-45.) Nevertheless, assuming that Mr. Garcia would indeed be deported to Peru upon his release,[5] this factor alone is not sufficient to outweigh the other factors as outlined above.

---

[5] Although deportation would be consistent with the immigration detainer recorded in his BOP records (*see* Supp. Mot. ex. K at 6, 9 (pin citation here refer to the pagination assigned by the Court's online CM/ECF system)), it is at odds with Mr. Garcia's compassionate release application to the warden of FCI Fort Dix, in which he stated that following release he would live with his wife in Orlando, Florida, where he would also be treated for his cardiac conditions, (Mot. ex. G). The Court's decision assumes that Mr. Garcia would, if he were released, be deported. The Court expresses no opinion at this time on whether Mr. Garcia should be deported following his imprisonment.

Therefore, even if the Court had found that "extraordinary and compelling reasons" supported a sentence reduction, the § 3553(a) factors would still weigh against reducing Mr. Garcia's sentence.

### CONCLUSION

For the reasons stated above, the Court respectfully denies Mr. Garcia's motion.[6]

**SO ORDERED**

Dated:       December 4, 2024
             Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge
Eastern District of New York

---

[6] Because the Court denies Mr. Garcia's motion for the reasons set out above, it expresses no opinion on whether a reduction of his sentence would comply with U.S.S.G. § 1B1.13(a)(2). *See Keitt*, 21 F.4th at 73 ("if a district court determines that one of [the § 3582(c)(1)(A)] conditions is lacking, it need not address the remaining ones" (citing *Jones*, 17 F.4th at 374)).